[File No. 6462.]

ANTON J. KARY, Respondent, v. NORTH DAKOTA WORKMEN'S COMPENSATION BUREAU, Appellant.

(272 N. W. 340.)

Opinion filed March 20, 1937.

*P. O. Sathre,* Attorney General, and *Milton K. Higgins,* Assistant Attorney General, for appellant.

*Thos. J. Burke,* for respondent.

BURR, J. The plaintiff, a farmer, was employed by the county of Morton in 1935 on Project No. 88 under the Federal Emergency Relief Administration, the employees being protected by workmen's compensation. When called upon he furnished his own labor and horse power to operate a fresno, driving to his work in a wagon. His hours were from 8 A. M. until 5 P. M., beginning with his arrival at the job and ceasing when the work stopped, with lunch hour off. His pay was 40c an hour for his own work and 50c an hour for the horses.

Plaintiff worked under the supervision and direction of a foreman, and because of a superfluity of labor, the foreman told him when to come to work. Plaintiff selected the horses himself and worked them himself. He furnished the feed and stable room, the same as he did on his farm.

On March 21 he lived about three miles from where the work was being done. When the work ceased, he started home. While on the public highway—the direct road to his home—and about a quarter of a mile from the place of employment, he was injured by being thrown from the wagon through sudden action of the horses.

The bureau denied compensation and the matter was litigated in the district court. Judgment was rendered in favor of the plaintiff and the defendant appeals.

Appellant says, "the sole issue is whether . . . the claimant . . . was injured in the course of his employment. . . ."

There is significance in the use of the word "only," and clearly the

legislature had a purpose in its use. Coming to work, returning from work, leaving the place of employment for lunch intending to return immediately thereafter are acts incidental to the employment and having a causal connection therewith, even after the actual work has ceased. Clearly the legislature intended to eliminate such as it limits the injuries to those which arise *in the course* of employment.

There is a distinction between injuries which grow "out of employment" and injuries sustained "in the course of employment." Stakonis v. United Adv. Corp. 110 Conn. 384, 148 A. 334, 336; Irwin-Neisler & Co. v. Industrial Commission, 346 Ill. 89, 178 N. E. 357, 358; McNicol's Case, 215 Mass. 497, 102 N. E. 697, L.R.A.1916A, 306, 4 N. C. C. A. 522; Goodwin v. Bright, 202 N. C. 481, 163 S. E. 576; Harden v. Thomasville Furniture Co. 199 N. C. 723, 155 S. E. 728.

When employee's hours of labor have ended, the daily work for which he is paid done, and he has left the place of employment, a subsequent accident is not "in the course of employment." This phrase refers to time, place and circumstances under which the accident occurs. Herald Printing & Stationery Co. v. Industrial Commission. 345 Ill. 25, 177 N. E. 701; Enfield v. Certain-Teed Products Co. 211 Iowa, 1004, 233 N. W. 141; Sullivan's Case, 128 Me. 353, 147 A. 431; Larsen v. State Industrial Acci. Commission, 135 Or. 137, 295 P. 195; Wynn v. Southern Surety Co. (Tex. Civ. App.) 26 S. W. (2d) 691.

But "course" may cover all the period between entering the premises and leaving the gates. Butler's Case, 128 Me. 47, 145 A. 394; Roxana Petroleum Corp. v. State Industrial Commission, 134 Okla. 181, 272 P. 847; Petroleum Casualty Co. v. Green (Tex. Civ. App.) 11 S. W. (2d) 388.

There is the period of employment; place, the designated location of the work; and work is such as the employee may reasonably do in connection with the purpose of his employment or incidental thereto. Ryerson v. A. E. Bounty Co. 107 Conn. 370, 140 A. 728; Stakonis v. United Adv. Co. 110 Conn. 384, 148 A. 334; Union Starch & Ref. Co. v. Industrial Commission, 344 Ill. 77, 176 N. E. 303; Great Atlantic & P. Tea Co. v. Industrial Commission, 347 Ill. 596, 180 N. E. 460, 83 A.L.R. 1208; Metting v. Lehr Constr. Co. 225 Mo. App.

1152, 32 S. W. (2d) 121; Wahlig v. Krenning-Schlapp Grocer Co. 325 Mo. 677, 29 S. W. (2d) 128; Conrad v. Cook-Lewis Foundry Co. 198 N. C. 723, 153 S. E. 266; Hama Hama Logging Co. v. Department of Labor & Industries, 157 Wash. 96, 288 P. 655. "Arising in the course of employment" has reference to the time of service—the hours of employment; "arising out of the employment" is determined by the relation to the master's business in which the employee works; while "arising out of and in the course of employment" requires a combination of both. Statutes differ in language and this difference affects the authoritative value of decisions.

An injury occurring "within the period of his employment, at a place where he might reasonably be, and while he was reasonably fulfilling the duties of his employment, or engaged in doing something incidental to it" perforce arises out of the employment; but the range of injuries in the latter class is greater. "An injury arises out of an employment when it occurs in the course of the employment and is the result of a risk involved in the employment or incident to it, or to the conditions under which it is required to be performed. The injury is thus a natural or necessary consequence or incident of the employment or of the conditions under which it is carried on. Sometimes the employment will be found to directly cause the injury, but more often it arises out of the conditions incident to the employment." Marchiatello v. Lynch Realty Co. 94 Conn. 260, 263, 108 A. 799, 800. See also Harivel v. Hall-Thompson Co. 98 Conn. 753, 120 A. 603.

Plaintiff cites Speas v. Boone County, 119 Neb. 58, 227 N. W. 87, 318, and Green v. Chippewa County, 189 Minn. 627, 250 N. W. 679. In each of these cases the plaintiff was a maintenance man on the highways of the county, and the statutes involved prescribed compensation for injuries "arising out of and in the course of his employment." In each case, differing from the one at bar, the injury arose during the hours of the day's employment—the noon hour. In the Nebraska case, though there was a strong dissenting opinion (227 N. W. 318), the court held there was such causal connection between acts being performed at the time he was injured, namely, the unhitching of the teams and feeding and watering preparatory to continuing

his work in the day, and the nature and contemplation of his employment that it could be said also that the injury arose *out of* his employment.

In the Minnesota case the facts are quite similar to those of the Nebraska case; in fact, the Minnesota court cites the Nebraska decision as authority. In the Minnesota case the court held that as this accident happened during the part of the day in which he was employed and, on what the court holds was, by extension, the premises of the employer, and as the workman was to continue his work in the afternoon, the injury received arose out of and in the course of employment.

The Minnesota court differentiates the case under consideration from its former decisions of State ex rel. Jacobson v. District Ct. 144 Minn. 259, 175 N. W. 110; Jotich v. Chisholm, 169 Minn. 428, 211 N. W. 579; Rosvall v. Duluth, 177 Minn. 197, 224 N. W. 840, which it does not overrule.

In the Jotich case the workman furnished his own team and during the lunch hour he drove to his home a mile distant for lunch and to feed his team. As he was unhitching, the team started suddenly, pulled the wagon upon him, and caused an injury. The court there held that such "accident did not arise out of and in the course of his employment."

In the case at bar it was not during the lunch hour even that the injury was received, but after his employment had ceased. There is respectable authority which would uphold allowance of compensation for injuries received while taking care of a team owned and furnished by the workman when the injury was received during the period of employment; but in the case at bar the period of employment was for definite hours and no injury was received during that period.

Respondent says, "It is admitted that under the general rule of law an employee is not entitled to compensation for injuries received while he is going to or from work." This is the rule in this state.

In Pillen v. Workmen's Comp. Bureau, 60 N. D. 465, 479, 235 N. W. 354, 360, we discuss this feature and show five what have been termed exceptions to the rule. The first noted is that of a traveling

salesman who is required, because of the nature of his employment, to travel upon the highway. The second deals with a case where the employer furnishes the transportation and thus the injury occurs in the course of the employment. The third is where an employee is subject to emergency calls, and, therefore, what he does to obey the call grows "out of his employment." The fourth is where the employee "is using the highway in doing something incidental to his employment with the knowledge *and approval* of the employer. . . ." And the fifth is where the employee is lawfully on the premises of the employer and at the place where the work is to be done and is at the time injured. This may grow "out of his employment." The employee is there in a different capacity from a trespasser or licensee or invitee. In all of these so-called exceptions it will be noted that the extension of the term of employment includes injuries which grow "out of his employment," but an injury cannot arise "out of the employment" unless it is within the scope of the employment. Wheeler's Case, 131 Me. 91, 159 A. 331, 332.

However, there is a limit to these acts growing "out of the employment." In Whitney v. Hazard Lead Works, 105 Conn. 512, 136 A. 105, the court says: "The tests to be applied are: Does the injury occur within the period of the employment? Does it occur in a place where the employee may reasonably be? Does it occur while he is reasonably fulfilling the duties of his employment?" All three must concur under the circumstances.

In the case at bar none of these applies. Plaintiff's employment began at 8 A. M. and ceased at 5 P. M. Under the rules he could only work eight hours in the day and his employment had ceased. The injury did not occur during the time of his employment. Neither did the injury occur "while he is reasonably fulfilling the duties of his employment." His employment was to drive his team, attached to the fresno, during the hours of employment and at the project. Neither can it be said that the injury occurred "in a place where the employee may reasonably be," because this means in the place of employment or connected with the employment or where his employment calls him to be. He was on the public highway going home from his work. So far as the employer was concerned, it was im-

material whether he walked, or rode, or was transported by a fellow workman. His method of reaching his employment, where he stabled his horses outside of the hours of employment, or how he handled them during that time were entirely foreign to his employer. The employer had no control over it, direct or indirect. Had the workman been injured while walking home, there would have been no question raised. But it is said the employer must have known he had to bring his horses and take them back, that he had to feed them and stable them. It is true horse power was hired, but the employer had nothing to say about the selection of the horses, how they were handled, or where they came from or were kept, or what became of them. As pointed out in Pillen v. Workmen's Comp. Bureau, 60 N. D. 465, 235 N. W. 354, supra (p. 479) the employee "was not doing anything he was employed to do at the time of the injury. He was in no different position than that of any other employee going to and from his place of work and was subject to no greater or different risk than that of any other" person driving his own team on the highway.

It is clear the injury did not occur "in the course of employment," and as this is the only kind of an injury for which compensation is provided, the judgment is reversed and the action is dismissed.

CHRISTIANSON, Ch. J., and NUESSLE and BURKE, JJ., concur.

MORRIS, J. I concur in the result.