| t CARAWAY, J.
The plaintiff/employee in this case was severely injured in an automobile accident while returning from work on a job in Mississippi. The accident occurred when the defendant/employee fell asleep while driving a company truck. The employer routinely deployed the employees to the jobsites of customers to service equipment that experienced mechanical problems. The trial court dismissed the plaintiff/employee’s tort claim against the fellow employee and the employer’s insurers following their motions for summary judgment. Finding that the employer’s immunity of the Workers’ Compensation Act applies, we affirm.

Facts

William E. Boyte, Jr. (“Boyte”) was a field technician for Hoist & Crane, an overhead crane service company with a regional office in Monroe. On July 6, 2000, Boyte and two other technicians traveled to Double G Coatings in Jackson, Mississippi, to service a crane. Boyte'rode with Todd Brakefield (“Brakefield”) in Brakefield’s company truck. The third employee, Andy Parker, drove another company truck and went by the Monroe office to pick up certain tools for the job. Brakefield and Boyte both lived in Bas-trop, and they drove directly from there to Jackson without stopping at the Monroe office. Brakefield picked up Boyte at Boyte’s home at 12:30 p.m. They arrived at Double G’s plant in Jackson at 3:00 p.m., and met Andy Parkér at the job. The three men worked all night, finishing up at 6:00 a.m. the next morning.
| ¡>.Boyte was the senior technician on the job and it was his responsibility to complete the trip sheet by indicating the number of hours worked. Hoist & Crane utilized portal (Monroe) to portal billing to compute employees’ compensation for travel time. Travel time for the Monroe to Jackson round trip was scheduled by the company at four hours. Boyte completed the trip sheet before the men left the jobsite to drive back to Louisiana. Boyte filled in 11:30 a.m. for “Time-In” and “9:30 p.m.”[1] for “Time-Out,” which would have included travel time.
After the two men left the Double G Coatings plant, they stopped at a McDonald’s drive-through and a convenience store and then got on the interstate in Jackson to return home to Bastrop. Although Boyte offered to drive, Brakefield did not permit him to drive because “he was in worse shape” than Brakefield (apparently referring to fatigue from working all night) and because Boyte was not allowed to drive company vehicles after totaling his company truck earlier in the year. Brakefield testified that Boyte was asleep before they were out of Jackson.
The accident occurred on 1-20 in Madison Parish after daylight, at about 6:50 a.m. Brakefield allegedly fell asleep at the wheel and lost control of the truck. The truck collided with a vehicle parked on the shoulder of the interstate. Brakefield sustained minor injuries, but Boyte was catastrophically injured.
| ¡¡Thereafter, Boyte and his wife, individually and on behalf of their two minor children, filed this suit for damages. Named as defendants were Brakefield and *296 the insurers of Hoist & Crane, Fire & Casualty Insurance Company of Connecticut and TIG Insurance Company. The workers’ compensation carrier, American International Underwriters Insurance Company, intervened and alleged that if Boyte was found not to be in the course and scope of employment when the accident occurred, it was entitled to reimbursement for compensation benefits and medical expenses. After conducting some discovery, Boyte’s attorney filed a motion for summary judgment on this issue. Defendants opposed the motion and filed cross motions on the same issue. The workers’ compensation carrier also opposed defendants’ motions, arguing that Boyte was not paid for all of the time it took to drive between Bastrop and Jackson, and thus he was outside of the course and scope of employment.
After a hearing, the trial court granted defendants’ motion for summary judgment, dismissing appellees from this suit.[2] It is from this judgment that the plaintiffs and intervenor appeal.

Summary Judgment

Appellate review of a grant or denial of summary judgment is de novo. Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181, 99-2257 (La.2/29/2000), 755 So.2d 226 (citing, Schroeder v. Board of Supervisors of Louisiana State Univ., 591 So.2d 342, 345 (La.1991)); Loflin v. International Paper Co., 34,976 (La.App. 2 Cir. 8/22/01), 793 So.2d 533. |4Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B).

Discussion

An employee is entitled to benefits under the Workers’ Compensation Act (“Act”) for personal injuries from an accident “arising out of and in the course of his employment.” La. R.S. 23:1031. The employer and the negligent employee are given immunity from civil liability for employment-related accidents covered under the Act. La. R.S. 23:1032. When the employer seeks to avail itself of tort immunity under Section 1032, the employer has the burden of proving entitlement to immunity. Mundy v. Dept. of Health & Human Resources, 593 So.2d 346 (La.1992).
The jurisprudence articulates certain rules and exceptions for accidents relating to employees coming to and going from work. The general rule barring coverage under the Act is that “in the ordinary employment situation with fixed hours and a fixed place of employment, an accident which occurs while the employee is traveling to and from work does not occur during the hours or at the location for which he was employed.” Jackson v. Long, 289 So.2d 205 (La.App. 4th Cir. 1974).
In the present case, appellants are essentially asserting the application of the general coming-and-going rule. Nevertheless, the focus of their argument is on one of the jurisprudentially developed exceptions to that rule which, appellants insist, cannot be proven by the defendants. The exception |sto the general rule, which would place Boyte in the course and scope of employment and provide the defendants with immunity, occurs “when the employer has interested himself in the transportation of the employee as an incident to the employment agreement, either by contractually providing transportation or reimbursing the employee for his travel ex *297 penses, or where wages are paid for the time spent in traveling.” Scott v. Smith, 30,330 (La.App.2d Cir.4/8/98), 714 So.2d 7.
In this ease, it is undisputed that at the time of the accident, Boyte was driving to his home from work and that travel expenses were not paid to him for the trip home. Appellants further argue that the four hours in wages which were allotted to Boyte in travel time for the trip had been depleted prior to the accident. By the time the accident occurred, Boyte had traveled 3 hours and 30 minutes' to Jackson on the previous day and 50 minutes on the return trip, for a total of 4 hours and 20 minutes. To the extent that the amount of the elapsed travel time is disputed by defendants, appellants insist that summary judgment was improperly granted because of the existence of a genuine issue of material fact.
Despite appellants’ argument, the course of employment issue cannot be so simply reduced to whether or not the defendants have proven the travel expense/reimbursement exception.
In Mundy, supra, our supreme court dealt with an employee’s injury which occurred on the employer’s premises as the employee was en route to work the evening shift on the eleventh floor of a state hospital. An unknown assailant stabbed the employee in the employer’s elevator. | ^Seeking immunity from' the employeé’s tort claim, the employer argued the application of another jurisprudential exception to the coming-and-going rule. The so-called threshold doctrine exception places the employee in the course of employment “when an accident occurs at a place with an unusually hazardous travel risk which is immediately adjacent to, but not on, the employer’s premises.” Mundy, supra at 350. Rejecting the employer’s pigeon-hole analysis, the court broadly analyzed the employment issue as follows:
An accident occurs in the course of employment when the employee sustains an injury while actively engaged in the performance of his duties during working hours, either on the employer’s premises or at other places where employment activities take the employee. Kern v. Southport Mill, 174 La. 432, 141 So. 19 (1932); W. Malone & H. Johnson, 13 Louisiana Civil Law Treatise — Worker’s Compensation § 161 (2d ed.1980). While coverage has been extended in some cases to include accidents during times for rest or lunch periods or before and after work on the employer’s premises, or to include accidents at places where employment duties are performed off the employer’s premises, the principal criteria for determining course of employment are time, place and employment activity.
The determination of whether an accident arises out of employment focuses on the character or source of the risk which gives rise to the injury and on the relationship of the risk to the nature of the employment. An accident arises out of employment if the risk from which the injury resulted was greater for the employee than for a person not engaged in the employment. Myers v. Louisiana Railway and Navigation Co., 140 La. 937, 74 So. 256 (1917). Moreover, an accident has also been held to arise out of employment if the conditions or obligations of the employment caused the employee in the course of employment to be at the place of the accident at the time the accident occurred. Kern v. Southport Mill, 174 La. 432, 141 So. 19 (1932). Thus, when the employee is squarely within the course of his employment, virtually any risk (whether an increased risk or not) has been considered as arising out of employment. W. Malone & H. Johnson, supra at § 193. *298 |7The principal objective of the “arising out of employment” requirement is to separate accidents attributable to employment risks, which form the basis of the employer’s obligation under the compensation system, from accidents attributable to personal risks, for which the employer should normally not be responsible. 1 A. Larson, Workmen’s Compensation § 7.00 (1990). The risks which have caused the greatest difficulty are those that have neither a particular employment character nor a particular personal character. Id.
This court has declined to view the “course of employment” and “arising out of employment” requirements as separate and unrelated concepts. Rather, this court has recognized the mutual interdependence of the two concepts in determining the relationship of the injury to the employment.
[[Image here]]
In the present case the “arising out of employment” inquiry reveals that the risk which gave rise to the injury was not greater for plaintiff than for a person not so employed. Moreover, while the conditions of the employment arguably caused plaintiff to be at the place of the attack at the time the attack occurred, there were other alternative routes for her to reach her work station. Inasmuch as the risk which gave rise to the injury was a neutral risk that was not related either to plaintiffs employment or to her personal life, the “arising out of employment” showing by the employer, while not particularly strong, could be considered sufficient if there was a strong “course of employment” showing.
As to the “course of employment” inquiry, plaintiff was attacked before she arrived at her work station and before she began her employment duties. Although she had entered the building in which her work station was located, she was in the public area of the budding open to the public, on an elevator used by patients and visitors as well as employees. She had never performed employment duties on the first or second floor, or on the elevator between those floors, and was not doing so at the time of the assault. She clearly had not yet reached the place where she would be under the supervision and control of her employer. Templet v. Intracoastal Truck Line, Inc., 255 La. 193, 230 So.2d 74 (1969). Under the circumstances one could hardly say that there was a strong “course of employment” showing.
Mundy, supra, at 349-350.
| aA Mundy analysis of this case reveals that the risk which both employees encountered arose after an exhausting eighteen to twenty hour time period on the job in another state. Brakefield fell asleep while driving home in the early morning hours after the extended overnight work effort. The risk of excessive fatigue related entirely to the erratic scheduling of employment assignments and not to the employees’ personal fives. Therefore, the risk of injury cannot be said to be a “neutral risk,” but one substantially “arising out of’ Boyte’s employment.
Regarding the “course of employment” inquiry, it is significant that Boyte and Brakefield were engaged in the kind of employment which has no fixed workplace. Their employer consistently deployed them to random locations to service crane equipment at irregular times, whenever customer service needs arose. This type of employment travel activity is very different from the ordinary commuter situation which the general coming-and-going rule contemplates.
In Jackson v. Long, supra, Justice Lemmon, the author of the later Mundy *299 decision, addressed a similar employment arrangement in writing for the Fourth Circuit Court of Appeal. The employee in Jackson was injured in an automobile accident while traveling to a jobsite in Mississippi with another employee who was driving. The employer, Manpower, Inc., was in the business of supplying temporary labor to its customers. The two employees were dispatched from the Manpower office in New Orleans and were paid no travel expenses or wages for their travel time. Declining to mechanically apply the general coming-and-going rule, the court ruled:
|9..., this case does not involve the ordinary employment situation, nor does it involve only one employment contract. In its business of furnishing laborers, Manpower contracted with plaintiff to perform services for Manpower’s customer at a designated time and place, and Manpower further contracted with the customer to dispatch someone to perform the services at that time and place. Therefore, Manpower employed plaintiff not just as a cook, but as a cook to be dispatched in accordance with the customer’s order.
[[Image here]]
... plaintiff was an employee who traveled in response to instructions from Manpower’s dispatcher and then performed services for a special employer at the assigned destination. Since the travel was in furtherance of the employment by the general employer, the risk of accident during travel was a risk interrelated with the nature of that employment, and the plaintiff was protected while traveling to the assigned place of work in obedience to the employer’s instructions and for the employer’s benefit.
Jackson, supra at 208.
Although Boyte and Brakefield were returning home from a job, the “course of employment” inquiry should lead to the same conclusion reached in Jackson. As indicated above, Boyte’s lengthy trip home following his irregular, out-of-state work shift certainly does not compare to the ordinary work commute in which the employee is generally considered to be outside of the course of employment. Additionally, Boyte utilized the company truck for transportation and was paid some wages for his travel time. Appellants seek to discount these factors since Brakefield was assigned to drive the company truck and four hours in travel time may have already elapsed. Nevertheless, these factors, even if viewed as appellants suggest, still weigh in favor of the “course of employment” showing.
Finally, even if the return trip in this case diminishes the “course of employment” showing, when compared to the employee’s trip to the jobsite |inin the Jackson case, the strength of the “arising out of employment” inquiry concerning the type of risk which Boyte encountered convinces us that the Act applies to this accident. Accordingly, the undisputed facts concerning time, place and employment activity, apart from any controversy involving the extent of Boyte’s wages for travel time, show that as a matter of law, Boyte’s injuries resulted from an accident arising out of and in the course of his employment and the defendants are entitled to the immunity of the Act.

Conclusion

For the reasons set forth above, the judgment of the trial court dismissing appellants’ claims against defendants is affirmed. Costs are assessed to appellants.
AFFIRMED.
PEATROSS, J., concurs in the result.
NORRIS, C.J., dissents with written reasons.

. The return trip would have ended at'approximately 9:30 a.m. on July 7, 2000; however, Boyte’s handwritten notation, consisting of "9:30,” was mistakenly inserted next to the “p.m.” portion of the trip sheet.

. One defendant, Ford Motor Company, remains in the suit.